Please be seated. Would the court call the next case, please? 319-0066 Bobby Holder, appellant by Frances Cermak v. Tini Tots Day Care Center et al., Epple East by Shiprock, et al. Mr. Cermak, good afternoon. May I please record? Good afternoon, Your Honors. My name is Francis Cermak. I represent the plaintiff appellant in this case, Mr. Bobby Holder. Mr. Holder is a 57-year-old grandfather who was picking up his two-year-old granddaughter, Camille, from her day care center when he injured himself. On the day he injured himself, as they were leaving the day care center, they had to climb a short staircase that was dimly lit, which had no wall on the left hand side, and had no silence whatsoever. As Mr. Holder was walking up the staircase behind his two-year-old granddaughter, he was watching her very intently, making sure she navigated the stairs okay, and he tripped and fell, breaking his hip. We are here today because Mr. Holder believes that the trial court erred when it found that the defendant appellee, Tiny Tots Day Care Center, did not owe a duty of care to Mr. Holder. Now, the trial court's ruling in this case was very confusing and had also applied seemingly conflicting standards. The trial court also made no record regarding some of the allegations that the court did. The court had a very succinct ruling stating that, first, there is no evidence of a defect with the stairs, and that allegations of the alleged dangerous conditions were unsubstantiated. Then the court ruled that Tiny Tots did not owe a duty pursuant to the open and obvious doctrine, pursuant to traditional tort analysis, and pursuant to the noticing requirement that's inherent, and thus grants a summary judgment. Upon asking the court why the court was finding, why the judge was finding that the open and obvious standard applied, or why there, whether there was an exception to the open and obvious standard, which we were arguing, the distraction exception, the trial court declined to expand upon its ruling. The court stated that it pursuant to traditional tort analysis, but it did not go through that So if the court was going to be finding that the open and obvious doctrine applied to this issue, that the staircase was an open and obvious danger, well, then two of the standards that the trial court also stated it relied upon shouldn't apply. If the danger is open and obvious, there is, you don't have to have evidence of a defect. You also don't have to have evidence of notice, because that's the nature of an open and obvious danger. So if the trial court's ruling here was very confusing, the court seemed to be relying upon the fact that, based upon the defendant's argument, that the staircase was an open and obvious danger. If that's true, then the trial court should have gone through the, even if, should have gone through the traditional duty analysis. The Illinois Supreme Court in Brunswick, Centralia, the most recent statements by the Supreme Court on the issue of distraction exceptions and the open and obvious doctrine in 2014, is that even if a trial court finds that a danger is open and obvious, you still must go through the duty analysis. Also, the trial court should have considered whether one of the exceptions to the open and obvious rule applied. There are two exceptions to the open and obvious rule, the distraction exception and also the determined encounter exception. Now, the determined encounter exception is not applicable here. We are arguing that the distraction exception should apply in this case, because Mr. Holder was actually distracted in this case. So are you conceding it was open and obvious? Judge, we argued that there was a question of fact as to whether the staircase was open, was an open and obvious danger. The courts have, Ward courts, the Brunswick court, have held that if there is a dispute as to the dangerous condition, that's a question of fact that should be determined by a jury or the trial court. That's why I'm trying to understand your position on appeal. Judge, our position is that it was disputed, there was a dispute as to the adequacy of the lighting, the signage, and the a question of fact. So we are, that is our position, that it's a question of fact as to whether the open and obvious standard applied, because the trial court didn't state why it was open and obvious. Isn't a stairway presumed to be open and obvious? Judge, it's not, that isn't always the case. Because I have been known to be wrong. Judge, it wasn't just the staircase here. We were considering the entire stairwell. There was a staircase with no wall on this side. There was a wall on the right-hand side, if you're walking up. There was a very low, child-sized height handrail on the left. There's no handrail on the right, and there is a garage-style carriage light. That's the only thing illuminating. Mr. Holder testified that the stairwell was dark, and he had to, when he was walking down that staircase initially, he had to place his hand on the wall to steady himself. And he testified that it was, it was a dark. I'm sorry? Where was this handrail? If you're walking up the staircase, and the pictures of the staircase are in volume one of the record, C-180 for C-185. There's a wall on the right-hand side, there's a small staircase, and then there is a child-sized handrail on the left. There is no wall, there's like a bookshelf up against the stairs. So there's no handrail for, at all, on the right-hand side, and that was testified to by the owner. But, there is a handrail on the left side? Child-type, yes. Let's talk about the open and obvious. Yes, Judge. You say there's a question of fact about lighting, but what else? Lighting, the lack of signage, and the lack of a handrail. Now. Didn't your client, during his deposition, say that he was fine, he thought the lighting was fine, if he felt unsafe, he would have said so? How do you, how do you get around those facts in your client's deposition? Mr. Holder testified that when he was crossing the landing and entering the door from the kitchen, and going to the stairs, he testified it was kind of dark. Like he was going from light to dark down there. He testified that he had to place his hand on the wall to steady himself. But he fell going out. That's correct, Judge. Okay, so where's the next step? Well, Judge, that's where, that's where the distraction exception comes into play. Because he fell due to the fact that he was distracted by watching his two-year-old daughter. Now. Now, the mechanism of the injury, he had flip-flops, and he caught the front of a flip-flop on his step as he was raising his foot? That's correct, Judge. Now, whether a condition is open and obvious can be a question of fact. Whether the plaintiff was actually distracted is also a question of fact. Now, here, if the court finds that the stairwell was open and obvious, well, that doesn't, it's not a, that's not a per se bar as the ward court held. You still must go through the traditional tort analysis, duty analysis, and look at whether the exception applies. Here, the distraction exception clearly applies. Now, the ward court first established the distraction exception. The Bruns Court most recently articulated it, and the Bruns Court stated that the distraction exception applies where the landowner has reason to believe that the invitee's attention might be distracted, so that he will not discover what is obvious, or will forget what he has recently discovered, or he will fail to protect himself against it. That's exactly what we have here. Mr. Holder testified that he was watching his two-year-old granddaughter walk up the staircase. He had never, he testified he had never been in this building before. He didn't know how well she could navigate the staircase. Now, why is that the landowner is responsible? In this instance, the distraction wasn't created by the landowner, was it? The distraction doesn't have to be, the distraction, that's not the rule of the law, Judge. The distraction does not have to be created by the landowner. It's whether the distraction is foreseeable by the landowner. So is it, is it foreseeable that a daycare owner should anticipate that people picking up their young children, two-year-old in this case, could be distracted as they are watching that child to make sure they don't hurt themselves as they leave the facility? They're in a daycare facility in the first place because they need to be watched. It is foreseeable that parents will be watching those same young children as they are leaving. The issue is not why they were distracted, but, but the issue, the Bruns Court held that the issue is not whether the plaintiff was looking elsewhere, but why they were looking elsewhere. Is there evidence for the court to infer that the plaintiff was actually distracted? And that's the testimony we have here, Judge. Mr. Holder testified that my main agenda was watching my granddaughter. He was asked, as you were walking up the stairs, where were you looking? I was watching her. My attention was on her. And I think the most salient testimony he gave was he was asked to describe how he exited the school. And we got to the steps and they disappeared. I'm behind my grandbaby because she's only two and we go up the steps. I'm behind her watching her. I get to the top step and there I go. I fell flat on my face. That's exactly the type of situation that the Bruns Court talked about, where the court stated that the plaintiff might fail to protect themselves against an open and obvious danger because they're actually distracted. Or that if he had just walked down that staircase, he might forget what he has already discovered. That's exactly supposed to cover the kind of situation here. He was actually distracted. And it is foreseeable by the daycare center that people watching their young children as they're leaving their daycare facility would be focused on making sure their young children don't hurt themselves when they're walking up a staircase that has no wall on the left side and doesn't have any handrail on the right hand side. Going through the traditional duty analysis is that if the distraction exception applies, as we believe it does here, the first two factors of the duty analysis are flipped on its head. The duty analysis factors are whether it was foreseeable that the defendant's conduct would result in injury, what is the likelihood of the injury, the burden of guarding against the injury, and the consequences of placing such a burden on the defendant. The courts held that when the distraction exception applies, the first two factors weigh in favor of the plaintiff. If the distraction exception applies, it is more foreseeable that they may be injured. It is more foreseeable that there is going to be a likelihood of injury. That is what the Brooms Court has stated, and all subsequent courts have held as well. It comes down to the foreseeability of the danger. In the other recent cases that have considered whether the distraction exception applied, the courts found that there was actual evidence of a distraction. In the Ward Court, it was the shopper walking out of the store and walked into a concrete pillar, and they said that it was foreseeable that someone might be distracted with their parcels. In Dilbert v. Bauer Brothers Construction, that case involved a construction worker walking out of a port-a-potty who was distracted by looking at falling debris above his head. That was an actual distraction. In the Bulldude v. Walgreens case, which was a recent decision by Appellate Court, is that there was a cleaning machine in the middle of an aisle, and the court said that it's foreseeable that someone could have been distracted while shopping and been injured by this cleaning machine. Was there evidence? The examples you've talked about, it's the landowner that created those obstacles, correct? Following up on Justice Holdridge's question, doesn't the distraction exception only apply where the landlord has created the condition? Not always, Judge, because like in the Rex Road case, there was a hole in the parking lot, which wasn't specifically created by the landowner. And the court just simply focused, again, the court didn't focus on whether the power that injured himself was created by the landowner, it was whether they were distracted when they injured themselves. And if the court in Rex Road found that someone could simply be, now in that case involved a high school football player walking across a parking lot, carrying a helmet to a player, because the coach said, go get a helmet. And so the court found that he was distracted simply from his job of carrying that helmet back to the other player. That was enough of a basis to show that he was distracted. He was distracted by his job of carrying the helmet. And who gave him that job? The football coach. An employee of the school? Yes, Judge. But again, it's the foreseeability of the injury. What I'm struggling with here, your client chose, it seems a little self-inflicted, he chose to watch his grandchild who wasn't having any trouble. We don't know that his granddaughter was having trouble. He was watching to make sure she didn't have trouble. She was two years old. I think he testified in his deposition that she managed the stairs really well. Eventually she did. But it is not, the business defendant here has, that's where their business is. They had to walk up that staircase. That's the staircase they put in place. They chose to have the light in there. They chose to not have a handrail. They chose to not install a $10 handrail and a couple of screws that he could have possibly grabbed onto when he tripped. The issue is foreseeability. I'm getting confused because maybe this is a childhood source of confusion. You seem to be talking about a defect when you say these things. Are you not? No, we didn't say that the stairs itself was defective, Judge. We didn't say that the carpet was loose or that the floorboards were loose. We're talking about the foreseeability of the injury. Is it foreseeable that patrons could be watching their children as they leave the building? Yes, it's foreseeable. In all of the cases where the courts found that the plaintiff was actually distracted, the courts also found, once they found that they were distracted, they engaged in the traditional duty analysis. And once the exception applied, the analysis weighs in favor of the plaintiff. And in all of those cases, the courts found that it was foreseeable on the defendant's part that the plaintiffs would be distracted. So the court found in the case with the kid with the football helmet that it's foreseeable that the child would have been distracted because there was a simple fix of making sure that the pathway was clear and he didn't have to go through the parking lot. So each time the court found that there was the distraction exception applied and found in favor of the plaintiff, the court also found that it was foreseeable on the part of the defendant that that's how they could have injured themselves. So here we're saying that the distraction exception should apply because there is evidence that he was actually distracted watching his granddaughter. He wasn't just looking elsewhere. Actually, in the Bruns case, that was what they held. They held that the plaintiff was just looking elsewhere. She wasn't actually distracted by anything. So the distraction exception didn't apply. But here, there was actual evidence of distraction. This would be a different case if Mr. Holder was just walking up the staircase and tripped and fell. That's not the case. He was walking up the staircase, focusing on his granddaughter, two years old, to make sure she could navigate a set of stairs that he had never seen before and had never seen her climb before. In the Ward case, wasn't the distraction a mirror that the plaintiff bought? Yes, the plaintiff had a large mirror in front of him. And the court said that it was reasonable, reasonably foreseeable that the store should have foreseen that someone would be distracted by their parcels as they left the building. And the court said that moving a concrete pillar was a minimal fix, that the burden was not that great on the store to actually move a concrete pillar. Here, the defendant could have simply put a $10 handrail that could have possibly helped Mr. Holder catch his fall if he was going to fall. Or they could have installed a brighter light or a handrail on the left side. I was going up the stairs. I have a picture in front of me of your stairwell. It's actually just three from the basement floor. There's just one, two, two steps up to the landing, am I correct? Three, three, Judge. There's actually three. Which do you count as the third step? Well, there's one step, two steps. And then, okay, you're at the restaurant. The third step is onto the landing. Yeah, it's a two-step to a landing, okay? I'm curious, is there any evidence in the record as on the left side, okay, which you said is down below is a child-sized height handrail. Is there, and if I understand, the place of injury was moving from the second step to the landing. Is that where the fall forward occurred? Yes, Judge. Okay. Is there any evidence in the record as to how high on the left side that wall is? There's not, Judge. From the landing? There is not, Judge. Okay, because this picture makes it look like it's, you know, you can simply put your hand on the top of that wall. But I don't know, the record doesn't have it. The record is not clear. You can see that there is, there's no wall there and there's no handrail. Well, there is a, it does look like there's a... Bookshelf. Okay, and it's a tied-in bookshelf, isn't it? That's supposed to be a child-sized gate that's at the very top to the left. And I say I'm over my time. If I could respond to your Honor's question. The, that is supposed to be at the very top, if your Honors are looking, that's a gate. That's a child-sized, like, safety gate, all right? So you can understand the height that is very low that I think the DCFS required them to put in. So, and then the handrail extends from that. So you can understand that that's very low and wouldn't be adequate for certainly an adult to prevent them from falling forward. If they grab onto that handrail, they're already on the ground. But I'm talking about the top of the bookcase. I don't know how tall that is. But it is, if it's, if your Honor looks at the, if the top of that child gate is almost at the height of that bookcase, that it is not very high. What is the purpose of that child gate? Do you know? That was, I believe, a requirement that DCFS required them to install as part of just being the gate here. Because there's a door, because of this doorway right here. So is it supposed to be a gate when the door is open? No. That I don't know. I don't know either. Thank you. Thank you. Thank you very much, Your Honors. Ms. Megan? Good afternoon. Good afternoon, Your Honors. I guess before I start, I'm recovering from a coughing bout. So I apologize for the water. This is just so I'm not coughing for the duration of my position. May it please the Court, Your Honor. So a couple of things just, you know, in relation to what counsel just argued. The first point is the trial court erred, you know, using conflicting standards when it granted the defendant's motion for summary judgment, you know, specifically regarding an open obvious and the notice. But that actually ignores the fact that both of those are required elements in the Illinois pattern jury instructions for premises liability cases, where a plaintiff who wants to, who was able to prove their negligence claim in a premises liability situation, which would be the case over here, must establish the defendant had notice of the condition and that it was not open and obvious. So regarding granting summary judgment on both those grounds, the trial court could not have erred when the juries are instructed in the same issues at a trial. If the jury is a fact finder. Agreed, Your Honor. But those, they actually go hand in hand. Because as the defendants argue in their motion for summary judgment, it wasn't that, you know, it was the arguments were laid in arguendo. The first point that the defendants raised was that there is no evidence of a hazardous condition. Similarly, there's also no evidence the defendants ever had notice of such a condition assuming that it did exist. The appellees will rely on the brief regarding that, as we argued. In regards to the grounds that are appealed over here, which is whether the trial court erred in finding that the open and obvious doctrine did apply and the traditional duty analysis applied, precluding the duty on behalf of the defendants. Here, as Your Honors point out, you know, there is really no dispute that this, assuming that this is terrible as counsel is saying it's a supposedly dangerous condition. It was open and obvious. They essentially concede that both at the summary judgment phase and currently by arguing the fact that distraction exception applies. The distraction exception is typically applied in situations where it is reasonably foreseeable that because of an external factor that is caused by the defendant, the plaintiff may be distracted and may fail to note an open and obvious condition. In this case, there is no such external factor. Mr. Holder's focus on his granddaughter was an internal decision, which is very distinguishable from the cases that they rely on. For example, in all three cases, whether it's Voldick v. Walgreen, Wilson v. Walhart, or Wade v. Kmart, all of them included conditions that were either placed by the defendant or they had taken some kind of affirmative action where the plaintiff had to confront that condition. That is not the case here. For example, in Voldick v. Walgreen, the cleaning machine was placed in the middle of the aisle. The plaintiff was looking at the items stocked on the shelves and there were... Yeah, we know pretty much the facts. I think we've covered this to that. But the question is, I think opposing counsel's argument is that the nature of the business itself with young children in daycare, that that is a creation of the defendant. And should that, therefore, the distraction of children, go upstairs, would be known, would be created by the defendant? Your Honor, in response to that, there are a few points on this. Under that analysis, every time a parent or grandparent or adult is walking with the child, it creates the distraction such as complying regardless of what the plaintiff's actual knowledge is and what the supposedly hazardous condition is. And the main crucial point here is that Mr. Holder's granddaughter had actually completed climbing the stairs at the time of the fall. He was specifically asked, you know, did she make it up the stairs? And he said, yes. And that was prior to his fall. So at the time of his actual fall, he was not watching her climb the stairs. She was done climbing. Additionally, he was also specifically... Is there a question of that? Your Honor, there's no contrary fact. She was done climbing the stairs, Your Honor. He testified that she was done? Yes. So, and there's no dispute regarding that. And specifically, he was also asked that when he lifted his left leg to make the landing, he knew there was a last step there, which is also supported by the fact that his right foot was already on the landing. So in regards to the distraction exception applies, for Mr. Holder's facts as they are here, he clearly knew there was a last step there to get on the landing. He also testified that as he walked up, he knew there were three, two steps to get to a third landing. Nothing blocked his view of the last step. And he knew that there was nothing blocking it when he was lifting his left foot up. So at that point in time, he's not distracted. He knows there's a step there. And that's what distinguishes this from the cases that counsel relies on, where the plaintiff was actually distracted at the time of the injury and the point where he was not able to pay attention to what the condition underlying his injury was. Instead, these facts are actually more similar to what this court found in Clyburn v. Freeport Farm Fleet. It was very similar. There, a plaintiff was carrying a bag of topsoil. And while walking in a pallet that had holes, one of her feet went through the holes. And again, the same issue was in place, is whether should the defendant have reasonably expected the plaintiff to be distracted while carrying topsoil and loading it into her truck. There, the court emphasized that the plaintiff testified she saw the pallet, saw the holes in the pallet, recognized the size of the pallet, and how high the pallet was off the ground. Here, the testimony is very similar, if not identical. Mr. Holder testified he knew the steps were there. He knew how many steps were there. He knew that he was in the middle of climbing the steps. He just climbed down these set of stairs just minutes previously. He had finished climbing two out of three of the steps entirely, had one foot on the landing of the last one. So there, there's, and his granddaughter was done climbing the stairs. So based on those facts, there's no reasonable foreseeability for the defendants to expect that he would be so distracted in the time it takes from one foot to make the step and the other foot to change the elevation, that he would forget the existence of the step and he would miss. And in regards to, you know, whether the condition of the stairwell as a whole, and that's what led to his fall, he was specifically asked in his deposition, what is it that caused you to fall? He was asked that direct question, and his response was that the edge of his left flip-flop cut the edge of the stair. He didn't mention about visibility, didn't mention anything about lighting, didn't mention anything about any kind of, you know, handrail, any kind of warning signs. In regards to the fact that there is no handrail on the right side, Mr. Holder's arms were by his side, as is his custom, when he climbed stairs. There's nothing in the record to suggest that he tried to reach for a handrail and found one lacking. As for the warning signs, it is still unclear exactly what the warning signs were supposed to warn him of. He was fully aware that there were stairs. Again, he knew there were three of them. He had just come down these set of stairs just minutes previously, and he was walking towards them as he left the downstairs area with his granddaughter. Where are the warning signs? So, Your Honor, there is a warning sign when you're coming from the opposite area, from the kitchen, when you're going down the stairs. It's on the outside of that door? It is on the outside door, because you're going down the stairs at that point in time, so someone who would not be able to see the stairs would know there are stairs down there. But here, he's walking towards the stairs, and he's climbing up. He's walking towards the door, and there's no signs there? Yes, Your Honor. And as for the point that there is no dim lighting, Mr. Holder testified that time of the fall, he had enough light to see his feet. He could see the steps that made up the stairs, could make out the shape, notice a change in elevation coming, and there was a new step that was coming. This entire scenario of inadequate lighting, the lack of handrails, none of that is supported by his own deposition testimony. And he, as he's the one who testified regarding the circumstances of his fall, there can't be no genuine issue of fact. The distraction exception did not apply. He knew that he was, his granddaughter had done climbing, and based on that, the trial court correctly found that the open obvious precluded the duty owed by the defendant. And it asks for the traditional court analysis, open obvious conditions mitigate the first two factors in favor for duty owed by the defendant, which just leaves the last two factors, which is the consequences of placing a burden of defendant and the allocation of responsibility. What are the first two factors? It's a reasonable foreseeability of injury and the chance of the likelihood of injury. So regarding that, the whole, you know, minimal measures that could have been taken. Here, the person that is in the most, is in the best position to avoid the injury is Mr. Holder himself. All he could have done was lift his left foot a little bit higher and avoided the edge of the step. That's what it comes down to, is the fact that his, the edge of his foot hit the edge of the step. What about the handrail? Yes, there is a handrail on the left side, Your Honor, but he does not use handrails. He was specifically asked whether, were you using the handrail as you climbed up the stairs? And he said, no. And then he was also asked, is when you're normally climbing up stairs, do you use handrails? And he says, no, his hands are by his side. It wasn't the edge of his foot, was it? The edge of his foot, Your Honor. That's considerable difference. Yes, Your Honor. Did he testify that when he's falling, he doesn't grab for a handrail? He, there's nothing in the record to suggest that. I'm sorry? There is nothing in the record to suggest that he tried to grab for a handrail when he fell. He fell forward, and I believe the way he described the fall was that with his, he fell directly straight across, and he actually, his body lay, came across a threshold area between the kitchen and the room going downstairs, Your Honor. Okay, my question was, did he testify that he never grabs for a handrail if he's falling? He did not, he did not testify that, Your Honor. Sorry, I'm sorry. Thank you. So the door was open at the time he fell forward? Yes, Your Honor. His granddaughter was up there, had already finished climbing, and she was in the area, and the employee who had escorted them out of the area was already past the doorway at the time of the fall, and then she came back and then found him. So regarding, you know, the initial measures that they could have taken, first, there's no such requirement, there's no, the sign would have been placed in the door between the threshold area, which would have actually been past this, so it would have been passed after the location of the fall. So it's unclear as to what a sign would have helped in that situation. And similarly, there was a hand on the left side, he chose not to use it. So the fact that there is no hand on the right side, I mean, that's not an issue. And the same, they said there was no wall on the left side, he had a wall on the right side and did not use that. So the whole, they're arguing for measures that were available to Mr. Holder, but he chose not to use them. And based on those two facts, and the fact that all Mr. Holder needed to do to avoid his injury was lift his left foot higher, the trial court correctly found that there was no genuine issue of fact and correctly granted some re-judgment to the defendants on lack of due and the tort analysis as well. If Your Honors don't have any other questions, I'm happy, thank you. Thank you. Mr. Cermak, rebuttal. Thank you, Your Honor. In a daycare, are parents and grandparents expect, supposed to just stop watching their children because they've reached the top of a flight of steps? No, they could be watching their, they should be watching their children the entire time they're walking through that daycare center. Now, as Your Honors can see at the top of that step in that landing, there was a doorway and there was another small step that they have to go into. Mr. Holder is still watching his granddaughter, whether Mr. Holder fell on a flat strip of, just a flat hallway in the daycare center. He's watching, it's reasonably foreseeable that parents and grandparents will be watching their children and can be distracted by them, especially when they're as small as two years old and not the best walkers. So it doesn't matter that he got to the top of the staircase and that's perhaps when he fell. He testified he is still watching his granddaughter. And the issue is whether there's evidence that he's actually distracted. And that is what Your Honors have here. It comes down to whether, since we're talking a lot about here, was he distracted? Was he not actually distracted? Did he stop being distracted when she got to the top of the staircase? That's a question of fact. That's what Baldrug v. Walgreens held when the court held that the parties disagree on whether a plaintiff was actually distracted so as to invoke the distraction exception to the open and obvious rule citing to Ward. And then in the second district case, 2000, Buck-Lotkin v. Lake County Family YMCA, there the trial court also reversed summary judgments finding that there was a page 602, there was a question of fact existed as to whether the dangerous part of a black mat sticking up was open and obvious and a question of fact existed as to whether a forgetfulness or distraction exception applied. Whether he was actually distracted is a question of fact which should have precluded summary judgments. Here, this court can find that there is evidence of a distraction watching his granddaughter, watching a two-year-old child leave a daycare center is reasonably foreseeable. And that is a question of fact that this court should find and that should have precluded summary judgments. In the cases cited by a defendant, the True Greenwood case and the Keebo v. Farman freight class case that she described in detail, the Baldrug case distinguished those cases finding that in both of those cases, there was zero evidence that the plaintiff was actually distracted. And the court said that in the Baldrug v. Wadding's case here, there was evidence that the plaintiff was actually distracted, that she was distracted by simply shopping. So those cases are distinguishable because there was zero evidence of that the plaintiff was actually distracted. Here, you have evidence that Mr. Holder was actually distracted. Mr. Holder also testified on page C-135 of the record that the staircase was dark, that he had to place his hand on the wall to steady himself as he descended. Now, just because he had walked up that staircase, walked down that staircase a few minutes earlier, that's why we have the distraction exception. The Bruns Court held paragraph 20 that the distraction exception applies where the plaintiff may have forgotten what he's discovered already or fails to protect himself against it. Here, Mr. Holder failed to protect himself against navigating the staircase at the sake of watching out for his daughter. He forgo his own safety to make sure that his granddaughter, two-year-old granddaughter, was safe. That's what the distraction exception is in place here. A very cheap fix by the daycare center to have simply installed an adult-sized handrail on the right-hand side could have possibly protected against Mr. Holder breaking his hip. And we would ask that the courts reverse the trial court, finding that summary judgment was not proper because there is a question of fact as to whether the stairwell was open in obvious danger and whether Mr. Holder was actually distracted. Thank you. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will stand in brief recess for a panel change.